ALEJANDRO SANTIAGO QUIÑONES y OTROS, demandantes y recurridos, *v.* ATLANTIC SOUTHERN INSURANCE CO., demandada y recurrente.

*Número:* R-77-195      *Resuelto:* 15 de noviembre de 1978

*Saldaña, López-Baralt & Rey,* abogados de la recurrente; *Benicio Sánchez Castaño* y *Benicio Sánchez Rivera,* abogados de los recurridos.

### SENTENCIA

El 15 de julio de 1977 accedimos revisar una sentencia dictada por el Tribunal Superior, Sala de San Juan, Roberts, J. Dicha sentencia declaró con lugar una demanda incoada por Alejandro Santiago Quiñones, su esposa y dos hijos menores de edad, contra Atlantic Southern Insurance Company, entidad dedicada al negocio de seguros para la cual trabajaba. La razón de pedir fue el alegado despido antes de cumplirse el término para el cual fue contratado y el reclamo de daños y perjuicios sufridos por Santiago, su esposa y sus hijos con motivo de las actuaciones de la demandada. La recurrente impugna la sentencia que le condenó a satisfacer $14,750.00 [1] a Santiago, $3,000.00 a su esposa y $1,000.00 a cada uno de sus hijos más $1,000.00 de honorarios de abogado.

En noviembre de 1971 Santiago y Atlantic Southern acordaron conforme a los términos de una "carta-contrato" el

---

[1] La suma de $14,750.00 concedida a Santiago se descompone así: $7,750.00 que el juez determinó le correspondían por el período que faltaba para la expiración del contrato luego de sustraerle la suma que Santiago había devengado en ese período, más $7,000.00 por los daños y perjuicios sufridos por éste a consecuencia de las actuaciones de la demandada.

traslado del primero a España con el propósito de establecer una sucursal de la compañía de seguros en aquel país. El demandante era empleado de la recurrente desde 1968 y había organizado con éxito una sucursal de ésta en la República Dominicana. Se acordó una compensación de $15,000.00 anuales.

La carta-contrato estableció los siguientes términos:

"Has aceptado permanecer allí [en España] trabajando para nuestra empresa por un mínimo de dos (2) años, a menos, por supuesto, que nuestra compañía, por cualquier razón decidiese trasladarte nuevamente a Puerto Rico o cualquier otro lugar anterior a cumplirse dicho término de dos (2) años.

Te has comprometido a no trasladar a tu familia a España durante los primeros seis meses de tu estadía allí. Luego de transcurridos los primeros seis meses y que a juicio de la compañía los resultados obtenidos por tí sean satisfactorios, trasladaremos a tu esposa e hijos a España."

Santiago se trasladó a España según acordado. En el proceso de organizar la sucursal tropezó con dificultades. La recurrente comunicó a Santiago su preocupación por el giro que tomaban los negocios de la sucursal en España e impartió instrucciones y recomendaciones a Santiago a los efectos de implementar las medidas necesarias para dar cumplimiento a las proyecciones que se habían establecido para la agencia. La recurrente, sin embargo, no imputa en esas comunicaciones, ineficiencia en el manejo de los asuntos de la sucursal, ni reprocha la gestión realizada por su representante.

Santiago permaneció a cargo de la sucursal por espacio de seis meses. Su gestión concluyó a fines de mayo de 1972, fecha en que un oficial de la compañía le notificó su inminente traslado a Puerto Rico. Le aclaró, no obstante, que dicho traslado en manera alguna afectaba el acuerdo de compensación existente. A su regreso a Puerto Rico continuó traba-

jando para la compañía. Antes de cumplido el término de dos años a que hace referencia la carta-contrato fue despedido. Se le pagó un mes de sueldo.

Atlantic Southern apunta como erróneas las determinaciones y conclusiones que hizo el tribunal de instancia a los efectos de que (1) el contrato celebrado entre las partes es uno por plazo determinado; (2) la corporación incurrió en violación del contrato y (3) la esposa e hijos del demandante tienen una causa de acción para resarcirse basada en negligencia y/o dolo de la recurrente.

El primer error no se cometió. Si bien tiene razón la recurrente al sostener que "el recurrido no tenía derecho absoluto a permanecer en España dos años ya que por los términos expresos de la propia carta-contrato el recurrido podía ser trasladado a otro lugar por cualquier razón antes de cumplirse dicho término", pierde de vista que los términos y condiciones de empleo consignados en la carta-contrato establecen claramente que Santiago prestaría servicios por un término de dos años bien en España, en Puerto Rico, "o cualquier otro lugar anterior a cumplirse dicho término de dos ... años."

Siendo el contrato uno por un plazo determinado de dos años no procedía el despido antes de expirado ese término.

El segundo error tampoco se cometió. La prueba no estableció la patente ineficiencia del demandante que invoca la recurrente como justa causa para el despido. Su contención está reñida con la prueba que obra en autos. Valga señalar que la propia recurrente en carta circulada a sus agentes anunciando el regreso de Santiago a Puerto Rico, elogia su labor y los servicios prestados por éste. Además, es interesante apuntar que en la contestación original a la demanda la recurrente alegó que Santiago "había renunciado voluntariamente a su empleo." No es hasta dos años más tarde que se enmienda la contestación y se alega que la patente inefi-

ciencia del recurrido constituye justa causa para su despido.

Ausente la prueba sobre la alegación de ineficiencia, la misma no puede servir de base al pretendido derecho de la recurrente a "reemplazar, trasladar y despedir al recurrido de su empleo independientemente de si el contrato de trabajo era por plazo determinado o indeterminado."

Pasamos a considerar la cuestión de las indemnizaciones concedidas. Como consignamos anteriormente el tribunal de instancia, además de concederle la compensación ajustada por el término que faltaba del contrato, le concedió a Santiago $7,000.00 de daños. El juez sentenciador determinó que "como resultado de su despido injustificado, el demandante Alejandro Santiago Quiñones también sufrió daños morales, vergüenzas y torturas mentales", pero no especificó los hechos que justificaban esa conclusión. Procede por lo tanto eliminar esa partida.

Tampoco procedía conceder indemnización alguna a la esposa e hijos de Santiago. La carta-contrato expresamente señala dos condiciones con arreglo a las cuales quedaba sujeta la procecencia del traslado de los familiares a España. La primera condición establecía un plazo de seis meses que deberian transcurrir antes de que la recurrente considerara el traslado. Esta condición, quedaba cumplida por el mero transcurso del tiempo fijado en la carta-contrato.

La segunda condición es la que determina si el traslado habría de efectuarse una vez hubieran transcurrido los seis meses. Esta segunda condición es la que de modo definitivo derrota toda pretensión de los codemandantes, puesto que de acuerdo con la misma la propia compañía se reservaba el derecho a condicionar el traslado de los familiares y sujetarlo a las resultas de la gestión realizada por Santiago Quiñones. Por sus términos expresos, la carta-contrato convertía a la recurrente en árbitro único de la labor realizada por el recurrido en España. Toda vez que la recurrente determinó que la

gestión de Santiago no era satisfactoria, ella no venía obligada a trasladar a su familia a España.

Modificada en los términos arriba expuestos, *se confirma la sentencia recurrida.*

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García no intervinieron. El Juez Asociado Señor Irizarry Yunqué emitió voto disidente.

(*Fdo.*) Ernesto L. Chiesa
*Secretario General*

—O—

Voto disidente del Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 15 de noviembre de 1978

La sentencia de este Tribunal elimina la indemnización por daños concedida a Santiago, su esposa e hijos. En cuanto a Santiago, se da como fundamento que el juez sentenciador "no especificó los hechos que justificaban esa conclusión." En cuanto a la esposa e hijos, concluye este Tribunal que no se justifica indemnizarles por no haberlos trasladado a España la demandada, ya que ésta se reservó el derecho a condicionar el traslado de los familiares de Santiago a las resultas de la gestión encomendádale. No estoy de acuerdo con la eliminación de tales partidas.

No creo que el tribunal sentenciador viniera obligado a especificar en detalle todos los hechos en que basó sus conclusiones de hechos. Las determinaciones de hechos no son equivalentes a la exposición de la prueba. En este caso el tribunal a quo concluyó en su determinación de hecho número 16, que "[c]omo resultado de su despido injustificado el demandante Alejandro Santiago Quiñones también sufrió daños morales,

vergüenzas y torturas mentales." Esa determinación halla abundante apoyo en la prueba, como señalaré más adelante.

Con respecto a la esposa e hijos del Sr. Santiago, convengo en que el hecho que no se les trasladase a España no es base que justifique la indemnización por daños pues la recurrente no quedó obligada absolutamente a facilitar dicho traslado. No obstante, la prueba estableció que estas personas sufrieron daños con motivo del incumplimiento del contrato por parte de la recurrente, al despedir al Sr. Santiago antes de la expiración del plazo de dos años. Esta prueba no fue contradicha. Veámosla.

Alejandro Santiago declaró que "sintió una tensión muy grande al ser despedido. Se fue a su casa y se puso a llorar. No se atrevió salir a la calle por alrededor de tres meses, durante los cuales no pudo solicitar trabajo. El automóvil le fue confiscado por el Chase Manhattan Bank. Luego se encontró con amigos, vecinos y clientes que le iban a dar su pésame." (Exposición narrativa de la prueba, pág. 3.)

En contrainterrogatorio declaró que después de ser despedido ". . . continuó asistiendo a un curso de motivación, auspiciado por la compañía, el cual se reunía una vez por semana durante horas laborales. El curso continuó por unas dos semanas después de su despido. Luego obtuvo un certificado por haber completado el curso. Después de estar alrededor de 3 ó 4 meses sin trabajo . . . ." consiguió empleo. (Exposición narrativa pág. 6.)

Flor Bermúdez de Santiago declaró que al ser despedido su marido, su reacción fue de llanto y de vergüenza frente a sus amigos. También describió su sufrimiento al ver que su hija tuvo que irse a trabajar para el sostén de la familia. (Exposición narrativa pág. 7.)

Flor Vanessa Santiago describió en corte sus sentimientos de incertidumbre y vergüenza ante el despido de su padre. Trabajó "part time" durante las navidades para ayudar a

su familia, y en el verano de 1973 continuó sus estudios y logró entrar a universidad. (Exposición narrativa pág. 8.)

Alejandro Santiago, Hijo, describió al declarar como testigo sus sentimientos de incertidumbre e infelicidad por el despido de su padre. (Exposición narrativa págs. 8–9.)

Se admitió en evidencia, como *Exhibit* A de la demandada, la deposición tomada a Doña Flor Bermúdez. En ella declaró que los hijos sufrieron con el despido de su padre; que éste "se puso más mal". "Todo eso [el despido] lo hacía sufrir y pensar. Estuvo [él] casi dos meses en la casa sin salir y buscar trabajo. Perdieron el carro porque el banco lo reposeyó." (Pág. 51.) Ante las amistades él y ella se sentían mal, sufrían, y tenían que dar muchas explicaciones de por qué él había sido despedido (pág. 54).

Reiteradamente hemos resuelto que la revisión se da contra la sentencia y no contra sus fundamentos. *Collado* v. *E.L.A.*, 98 D.P.R. 111, 114 (1969); *Rodríguez* v. *Serra*, 90 D.P.R. 776, 777 (1964); *Capó Sánchez* v. *Srio. de Hacienda*, 90 D.P.R. 149, 156 (1964); *Romany* v. *El Mundo, Inc.*, 89 D.P.R. 604, 617 (1963).

Aparte de las precedentes consideraciones, me parecen algo exageradas las cuantías concedidas por daños morales. Las reduciría en un cincuenta por ciento y en ese sentido modificaría la sentencia recurrida.